IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
*Orlando Division*

FILED
APR 11 2014
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re

**DUANE WOODMAN**

*Petitioner/Plaintiff*

Case No. **6:13-bk-10272-CCJ**

---

Duane Woodman

*Plaintiff,*

vs.

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WF1**

*Defendant.*

_____/

Adversary No.: **6:14-ap-00039-CCJ**

**First Amended Verified Adversary Complaint**

## FIRST AMENDED VERIFIED ADVERSARY COMPLAINT

The Plaintiff Duane Woodman alleges:

### I. Jurisdiction and Venue:

1. On August 16, 2013, Petitioner/Plaintiff, Duane Woodman (hereinafter "Plaintiff") filed a voluntary petition in Bankruptcy, Case number 6:13-bk-10272-ABB, in the Middle District of Florida, and on that date, was entitled to relief under Chapter 13 of the Bankruptcy code.

2. This adversary proceeding is commenced under the Federal Rules of Bankruptcy Procedure and is a Core Proceeding pursuant to 28 USC 157 (b)(2)(K) determinations of the validity, extent, or priority of liens.

3. Venue is proper in this district as this proceeding arises in and relates to a case under the Bankruptcy Code pending in this district.

4. The subject estate leased to Plaintiff is situated in Osceola County, Florida, within this district.

5. This court has jurisdiction over the federal claims and has supplemental jurisdiction over any State claims.

## II. Parties to the Action:

6. The Plaintiff, Duane Woodman, is an individual who, at all times relevant herein, is more than 18 years of age and is leasing the subject property, further described as 2344 Pleasant Hill Rd., Kissimmee, Florida (hereinafter "the property").

7. Plaintiff is informed and believes based thereon, and alleges that Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WF1 (herein after "U.S. Bank") in its capacity as Trustee, according to the Florida Department of State, Division of Corporations is not registered in the State of Florida, but maintains it principal place of business at 425 Walnut Street, Cincinnati, OH 45202-3923.

## III. Preliminary Statement:

8. Early in 2009, while living in California, Plaintiff experienced what millions of other Americans were facing, the Wall Street and Banking Mortgage crises that put tens of millions of homes and jobs at risk. Plaintiff was looking for additional work, and considered Texas or Florida in regard to energy conservation. Plaintiff then decided that Florida would be a good place to start establishing himself besides California as an energy conservation expert and consultant. On November 1, 2009, Plaintiff signed a lease *(see Exhibit A)* for the property at 2344 Pleasant Hill Road, Kissimmee, Florida with the owner, Arlette deAndrade.

9. Ms. deAndrade and Plaintiff entered into an agreement where as the lease payments would be discounted in exchange for maintenance of the property. Plaintiff has maintained and completed numerous repairs on the property, and therefore, has a vested interest in the property.

10. Eventually Plaintiff began receiving letters in the mail from 3 different entities stating that they were entitled to receive Plaintiff's lease payments. At the time, a local television news station was warning its viewers about scams of properties in foreclosure where companies were trying to fraudulently collect rents when they had no authority to do so. Plaintiff did not want to pay rent to the wrong party or to a party with no authority and standing to collect rent.

11. Plaintiff was drawn into Ms. deAndrade's and U.S. Bank's conflict when U.S. Bank refused to honor his lease. On or about April 7, 2012, Plaintiff filed a copy of the lease with the Osceola County Sherriff's Office, and with the Osceola County Court, and also sent it to Ronald R. Wolfe & Associates, LP, attorney for U.S. Bank. On April 12, 2012, the case court docket in the state court indicated that the Sheriff's office had submitted a copy of the lease with the clerk of court. Plaintiff had been considering filing bankruptcy due to other issues, but later, when 2 other parties began making claims on their right to collect the rent, and the attorney for U.S. Bank would not honor Plaintiff's lease and kept moving against Plaintiff to evict, in spite of his valid lease, Plaintiff was then forced to file for bankruptcy protection because there was no other lawful remedy available to protect his lease, and deal with his other issues of debt.

12. **PLAINTIFF IS A LAWFUL TENANT** who is protected by Pub. Law No. 111-22, §702 - Protecting Tenants at Foreclosure Act of 2009, (May 20, 2009) *codified* at 12 U.S.C. § 5220, as well as Florida tenant protection statutes. All tenants who have bona-fide leases are protected in homes with federally-issued loans, as per the above act. Tenants with a valid lease have the right to stay in the residence until the end of the lease term, unless the purchaser at foreclosure will personally occupy the home as the purchaser's primary residence. U.S. Bank allegedly re-purchased the property for $100.00 (which they claimed to already own). It impossible for a bank itself to occupy the residence, and to date, the property has not been re-sold.

## COUNT 1

13. Plaintiff requests and moves this court for Declaratory Relief, and to declare the lease valid, and to enforce Plaintiff's right to possession. Plaintiff would be unfairly prejudiced against if the lease was not to be honored.

## COUNT 2

14. In the alternative, Plaintiff requests and moves this court to modify the lease to no more than double the amount stated in the lease.

## COUNT 3

15. Plaintiff requests and moves this court for Monetary Relief. Plaintiff has a vested interest in the property for maintenance and work and to fully reimburse Plaintiff for the fair market value of the maintenance, repairs and work completed on the property. And or offset.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully prays for relief from the court, and states as follows:

1. That the court Declare the lease valid and enforceable;

2. That the court order Defendant to honor the lease, or in the alternative, modify the lease as acceptable to both parties;

3. That the court order Defendant to fully reimburse Plaintiff for the fair market value of the maintenance, repairs and work completed on the property;

4. That the court award the Plaintiff costs and reasonable costs of defense or attorney fees as provided by 15 U.S.C. 1640(a);

5. That the court issue a temporary restraining order, a preliminary injunction, and a permanent

injunction, all enjoining Defendant, and its agents, trustees, assignors/assignees, transferors/transferees, servants, and employees, and all persons acting under, and/or in concert with, or for them:

    a. from wrongfully evicting Plaintiff, who is a senior citizen, while he has a valid and enforceable lease in place;

6. That the court require Defendant to cover all costs of Plaintiff's suit incurred in this action; and

7. For all such other and further relief, in law or in equity, as the court may deem just and proper.

## IV. Jury Demand

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully Presented,                                  On this 11th day of April, 2014

*[signature]*
**Duane Woodman**, *Petitioner / Plaintiff*


## EXHIBIT LIST

Exhibit A  -  Plaintiff's Lease

---

## VERIFICATION

I, Duane Woodman, am the Plaintiff in the above-entitled action. I have read the above VERIFIED ADVERSARY COMPLAINT, and I have personal knowledge of the matters stated herein, except as to those matters stated upon information or belief, and, as to those matters, I believe them to be true.

I hereby declare under penalty of perjury, under the laws of the State of Florida, that the foregoing is true and correct to the best of my knowledge and understanding, as executed this 11th day of April, 2014, in the County of Osceola.

by: *[signature]*
**Duane Woodman**, *Petitioner / Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing:

AMENDED VERIFIED ADVERSARY COMPLAINT,

has been filed with the court, and that I have been furnished it, by fax, and/or electronic or regular U.S. Mail to all parties listed below on this 11th day of April, 2014.

by: /s/ Duane W/

**Duane Woodman**, *Petitioner / Plaintiff*

*Courtesy Copy to:*
**Ronald R. Wolfe & Associates, P.L.**
Post Office Box 25018
Tampa, FL 33622-5018

**Laurie K. Weatherford,** *Trustee*
Post Office Box 3450
Winter Park, FL 32790

**U.S. Trustee**
400 W. Washington St. Suite 1101
Orlando, FL 32801

# Residential Lease Agreement

This residential Lease Agreement made this 1st day of November, 2009, is by and between Duane Woodman *(hereinafter called "Tenant", "Lessee", "you", or "your")*, and property owner, Arlette de Andrade *(hereinafter called "Landlord", "Lessor" or "Owner")*.

Landlord agrees to lease to Tenant, and Tenant agrees to lease from Landlord, the house and land making up the property known as 2344 Pleasant Hill Road, Kissimmee, Florida [34746], (hereinafter called "Property", or "premises") under the following terms and conditions:

Clause 1.  Identification of Landlord and Tenant

   This Agreement is voluntarily entered into by and between Duane Woodman *("Tenant")* and Arlette de Andrade *("Landlord")*. Each Tenant is jointly and severally liable for the payment of rent and performance of all other terms of this Agreement.

Clause 2.  Identification of Premises

   Subject to the terms and conditions in this Agreement, Landlord rents to Tenant, and Tenant rents from Landlord, for residential purposes only, the premises located at the corresponding postal service address of: 2344 Pleasant Hill Road, Kissimmee, Florida *("the premises")*, together with the following furnishings & appliances: One (1) Whirlpool Dishwasher, Whirlpool Microwave, and one (1) Whirlpool Range, Frigidaire refrigerator (white), & miscellaneous furnishings. All other appliances are to be supplied by tenant(s).

Clause 3.  Limits on Use and Occupancy

   The premises are to be used only as a private residence for Tenant listed in Clause 1 of this Agreement, and the following minor children:   N/A.

   Up to two guests may stay an unlimited period of time without Landlord's written consent. Third guest and more must have Landlord's prior written consent, and longer term guests will be required to fill out an application and sign a short term stay agreement.

   Occupancy by more than 2 guests at a time is prohibited without Landlord's written consent and will be considered a breach of this Agreement.

Clause 4.  Term of the Tenancy

   The term of the rental will begin at 8:00 am on Nov. 2, 2009, and unless otherwise terminated, will continue on an automatic, annual renewal basis, and end at midnight on Nov. 1, 2010, or if automatically renewed/extended, on Nov. 1, 2014. If Tenant intends to vacate premises before the term ends, Tenant must provide prior written notice to Landlord thirty (30) days in advance of term end. This lease is automatically renewed on an annual basis, but renewal may be terminated upon 30-day written prior notice from Tenant. Lease is for annual basis, for 2-year or 5 year period following end of lease term. *( See Lease Renewal & Schedule Addendum on page 7 ).*

1 | Page

## Residential Lease Agreement  (continued)

### Clause 5.  Payment of Rent

*Regular monthly rent.*

Tenant will pay to Landlord a monthly rent of $ 250.00, payable in advance on the first day of each month, except when that day falls on a weekend or legal holiday, in which case rent is due on the next business day. Rent will be paid to Arlette de Andrade at 2344 Pleasant Hill Road, Kissimmee, Florida, or by such other means and or place as Landlord designates.

*Delivery of payment.*

Rent may be paid: in person at 2344 Pleasant Hill Road, Kissimmee, Florida, or by mail to A. de Andrade, PO Box 421463, Kissimmee, Florida 34742, or by such other means and or place as Landlord designates.

*Form of payment.*

Landlord will accept payment in these forms:
1. personal check
2. cashier's check
3. money order
4. cash

*Pro-rated first month's rent.*

For the period from Tenant's move-in date N/A, through the end of the month, Tenant will pay to Landlord the prorated monthly rent of N/A. This amount will be paid on or before the date the Tenant moves in. Prorated rents may be applicable after end of lease term if requested to facilitate convenience of move out.

### Clause 6.  Late Charges

If Tenant fails to pay the rent in full before the end of the 5th day after it's due, Tenant will pay Landlord a late charge of 5% of the monthly rent, and or plus $ 1.00 for each additional day that the rent remains unpaid. The total late charge for any one month will not exceed $ 50.00. Landlord does not waive the right to insist that payment of the rent in full be made on the date it is due.

### Clause 7.  Returned Check and Other Bank Charges

If any check offered by Tenant to Landlord in payment of rent, or any other amount due under this Agreement, is returned for lack of sufficient funds, a "stop payment," or any other reason, Tenant will pay Landlord a returned check charge of $ 35.00.

**Residential Lease Agreement**  *(continued)*

**Clause 8.    Security Deposit**

On signing this Agreement, Tenant will pay to Landlord the sum of $ 0.00 as a security deposit.  ~~Tenant may not, without Landlord's prior written consent, apply this security deposit~~ to the last month's rent or to any other sum due under this Agreement.  Within five (5) days after Tenant has vacated the premises, returned keys, and provided Landlord with a forwarding address, Landlord will give Tenant an itemized written statement of the reasons for, and the dollar amount of, any of the security deposit retained by the Landlord, along with a check for any deposit balance.

**Clause 9.    Utilities**

Tenant will reimburse to the Landlord all utility usage charges, including electricity, except for the following, which will be paid by Landlord:  Water, Trash removal. An Electricity charge of 20% of the total monthly electric charge shall be added to the monthly lease.

**Clause 10.    Shared Tenancy**

Tenant understands and agrees that part of the leased premises may at times be shared with one or more other Tenants under this Agreement, and agrees to abide in peaceful cooperation of shared common areas with any other Tenants if applicable.

**Clause 11.    Tenant's Maintenance Responsibilities**

Tenant will:

(1) keep the premises clean, sanitary, and in good condition and, upon termination of the tenancy, return the premises to Landlord in a condition identical to that which existed when Tenant took occupancy, except for ordinary wear and tear;

(2) immediately notify Landlord of any defects or dangerous conditions in and about the premises of which Tenant becomes aware; and

(3) reimburse Landlord, on demand by Landlord, for the cost of any repairs to the premises damaged by Tenant or Tenant's guests or business invitees through misuse or neglect. ***Security deposit is waived for Tenant.***

**Clause 12.    Repairs and Alterations by Tenant**

a. Except as provided by law, or as authorized below, or by the prior written consent of Landlord, Tenant will not make any repairs or alterations to the premises.

b. Tenant will not repair, tamper with, or alter any of the existing security equipment placed on the property by Landlord without the prior written consent of Landlord.

## Residential Lease Agreement *(continued)*

    c. Tenant will not, without Landlord's prior written consent, alter, re-key, or install any locks to the premises, or install or alter any burglar alarm system. Tenant will provide Landlord with a key or keys capable of unlocking all such re-keyed or new locks, as well as instructions on how to disarm any altered or new burglar alarm system.

### Clause 13.  Violating Laws and Causing Disturbances

Tenant is entitled to quiet enjoyment of the premises. Tenant and guests or invitees will not use the premises or adjacent areas in such a way as to:

(1) violate any law or ordinance, including laws prohibiting the use, possession, or sale of illegal drugs, or cause disturbances to other tenants that may in the property; or

(2) commit waste of utilities, accumulate excessive waste, or cause property damage; or

(3) create a nuisance by annoying, disturbing, inconveniencing, or interfering with the quiet enjoyment, and peace and quiet of any other tenants or other nearby residents.

### Clause 14.  Pets

No animal, bird, or other pet will be kept on the premises, except properly trained service animals needed by blind, deaf, or disabled persons, and up to either 1 cat or 2 dogs under the following conditions: by prior written consent and a pet deposit of $150.00, and they must be house trained. All costs damages caused by Tenant's pets must be paid in full and is due and payable at time of monthly lease payment or when assessed by Landlord.

### Clause 15.  Landlord's Right to Access

Landlord, or Landlord's designated agents, may enter the premises in the event of an emergency, to make any required repairs or improvements. Except in cases of emergency, or where it is impractical to do so, Landlord shall give Tenant 12-24 hour notice before entering premises.

### Clause 16.  Extended Absences by Tenant

Tenant will notify Landlord in advance if Tenant will be away from the premises for 90 or more consecutive days. During such absence, Landlord may enter the premises at times reasonably necessary to maintain the property, to secure the premises, and or to inspect for any required maintenance or repairs.

### Clause 17.  Possession of the Premises

    a. *Tenant's failure to take possession.*

        If, after signing this Agreement, Tenant fails to take possession of premises, Tenant will still be responsible for paying rent & complying with all other terms of this Agreement.

4 |

## Residential Lease Agreement *(continued)*

b. *Landlord's failure to deliver possession.*

If Landlord is unable to deliver possession of the premises to Tenant for any reason not within Landlord's control, including, but not limited to, severe damage, or partial or complete destruction of the premises, Tenant will have the right to terminate this Agreement upon proper notice, as required by law. In such event, Landlord's liability to Tenant will be limited to the return of all sums previously paid by Tenant to Landlord.

### Clause 18.   Sub-letting

Tenant may sublet the leased premises pursuant to this lease agreement with a 15-day prior written notice to Landlord, and with consent of Landlord, based on a period of up to 5 years per each lease term, up to two consecutive 5-year terms.  Tenant is allowed to sublet to one (1) additional tenant with Landlord's prior approval and written consent.

### Clause 19.   Assignment

Tenant may assign this lease agreement with a 15-day prior written notice to Landlord, and with Landlord's consent, based on a period of up to 5 years per each lease term, up to two consecutive 5-year terms.  Tenant is allowed to assign the lease to up to two (2) additional tenants with Landlord's prior approval and written consent.

### Clause 20.   Payment of Court Costs and Attorney Fees in a Lawsuit

In any action or legal proceeding to enforce any part of this Agreement, the prevailing party shall <u>not</u> recover reasonable attorney fees and court costs.

### Clause 21.   Disclosures

Tenant acknowledges Landlord has made the following disclosures regarding the premises:

[ ✓ ] One room in house has minor leak in ceiling that Landlord intends to have repaired.

[ ✓ ] Property is on septic and must be treated monthly for septic maintenance.

### Clause 22.   Additional Provisions

a. Tenant will act as superintendent & caretaker of property in absence of all other Tenants and Landlord.

b. Tenant accepts Property in "as is" condition as suited for the use intended.

Residential Lease Agreement   *(continued)*

Clause 23.   Disclosure

Tenant acknowledges that they are hereby notified that this property is, or may be in the near future, in a foreclosure fraud case and or mortgage agreement dispute. Tenant additionally hereby accepts appointment as a Trustee of the Land Trust, and agrees to secure property on behalf of the Land Trust. Tenant also agrees and is obligated to accept and collect any process of service, documents or contact information for any bank affiliates, Vendors, Realtors or any other third parties that may come to the property, making any type of inquiry and/or claims.

Clause 24.   Validity of Each Part

If any portion of this Agreement is held to be invalid, its invalidity will not affect the validity or enforceability of any other provision of this Agreement.

Clause 25.   Grounds for Termination of Tenancy

The failure of Tenant or Tenant's guests or invitees to comply with any term of this Agreement, or the misrepresentation of any material fact on Tenant's rental application, is grounds for termination of the tenancy, with appropriate notice to tenants and procedures as required by law.

Clause 26.   Entire Agreement

This document constitutes of the entire Agreement between the parties, and no promises or representations, other than those contained herein and those implied by law, have been made by Landlord or Tenant. Any modifications to this Agreement must be in writing and signed by both Landlord and Tenant.

Clause 27.   ACCEPTANCE:   By my signature below, I am confirming that I have read, fully comprehend, & will comply with all of the terms, conditions & provisions set forth herein.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed in person on the day and year written below.

TENANT:

_____   Date: 11 / 1 / 2009
Duane Woodman, *Tenant*

LANDLORD:

_____   Date: Jan / 01 / 2009
Arlette de Andrade, *Owner*

*Leased premises:*   2344 Pleasant Hill Road, Kissimmee, Florida

6 | Page

## LEASE RENEWAL & SCHEDULE AGREEMENT

☒ By their initials below, both parties agree that this Lease has been automatically renewed for the Lease period of December 2, 2009 until December 1, 2010.
    Tenant: _[initials]_     Landlord: _[initials]_
    Rate change: _none_

☒ By their initials below, both parties agree that this Lease has been automatically renewed for the Lease period of December 2, 2010 until December 1, 2011.
    Tenant: _[initials]_     Landlord: _[initials]_
    Rate change: _none_

☒ By their initials below, both parties agree that this Lease has been automatically renewed for the Lease period of December 2, 2011 until December 1, 2012.
    Tenant: _[initials]_     Landlord: _[initials]_
    Rate change: _n/a_

☐ By their initials below, both parties agree that this Lease has been automatically renewed for the Lease period of December 2, 2012 until December 1, 2013.
    Tenant: _[initials]_     Landlord: _[initials]_
    Rate change: _n/a_

☐ By their initials below, both parties agree that this Lease has been automatically renewed for the Lease period of December 2, 2013 until December 1, 2014.
    Tenant: _[initials]_     Landlord: _[initials]_
    Rate change: _n/a_

☒ Tenant requests a new lease agreement for additional rental periods as follows:
    ☐ 1 YR.    ☐ 2 YRS.    ☐ 3 YRS.    ☐ 4 YRS.    ☒ 5 YRS.
    Tenant: _[signature]_     Landlord: _[initials]_
    Rate change: _[illegible]_

# Residential Lease Extension

This residential Lease Extension made this 1st day of November, 2009, is by and between **Duane Woodman** *(hereinafter called "Tenant", "Lessee", "you", or "your")*, and property owner, **Arlette de Andrade** *(hereinafter called "Landlord", "Lessor" or "Owner")*.

Landlord agrees to lease to Tenant, and Tenant agrees to lease from Landlord, the house and land making up the property known as 2344 Pleasant Hill Road, Kissimmee, Florida [34746[, (hereinafter called "Property", or "premises") pursuant to the terms and conditions outlined in the original Residential Lease Agreement, dated November 1, 2009, by and between Landlord and Tenant, with the exception of the clause section changes as follows:

**Clause 3.   Limits on Use and Occupancy**

The premises are to be used only as a private residence for Tenant listed in Clause 1 of this Agreement, and the following minor children:   N/A.

Up to two guests may stay an unlimited period of time without Landlord's written consent. Third guest and more must have Landlord's prior written consent.

**Clause 4.   Term of the Tenancy**

The term of the rental extension period will begin at 8:00 am on Nov. 1, 2014, and unless otherwise terminated, will continue on an automatic, annual renewal basis, and end at midnight on Nov. 2, 2015, or if automatically renewed/extended, will end on Nov. 1, 2019. If Tenant intends to vacate premises before the term ends, Tenant must provide prior written notice to Landlord thirty (30) days in advance of term end. This lease is automatically renewed on an annual basis, up to a 5-year period, and unless terminated by Tenant by written notice, will be automatically extended for an additional 5-year period. This lease extension/renewal may be terminated upon 30-day written prior notice from Tenant. Lease is automatically renewed annually for 5 year period.

**ACCEPTANCE:**   By my signature below, I am confirming that I have read, fully comprehend, & will comply with all of the terms, conditions & provisions set forth herein.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed in person on the day and year written below.

TENANT:

_____   Date: 11 / 1 / 2009
Duane Woodman, *Tenant*

LANDLORD:

_____   Date: Nov. / 01 / 2009
Arlette de Andrade, *Owner*

Leased premises:   2344 Pleasant Hill Road, Kissimmee, Florida

1 | Page